**Appeal of SUMMIT WHOLESALE GROCERY CO.**                    **Docket No. 676.**

When closing inventories disclose damaged merchandise, the *bona fide* selling prices less cost of selling, within thirty days after the inventory date, may be used in valuing such goods for inventory purposes.

Submitted January 19, 1925; decided April 25, 1925.

*W. W. Thompson, C. P. A.*, for the taxpayer.

*Robert A. Littleton, Esq.*, for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal involves a deficiency in income and excess profits taxes for the year 1919. The entire amount of the deficiency is not in controversy, but only so much thereof as arises from the refusal of the Commissioner to permit taxpayer further to reduce its closing inventory for the year 1919 by $28,572.51. The appeal was submitted on the pleadings and the evidence, from which the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is an Ohio corporation, with its principal office at Akron, Ohio, and is now, and was during the year 1919, engaged in the wholesale grocery business.

2. At the close of the year 1919, the taxpayer made an inventory of all merchandise on hand, and priced it at cost or market, whichever was lower. The market price ascribed to the various items listed in the inventory was the market price of perfect goods of the same kind. A considerable portion of the goods and merchandise, mostly canned and bottled goods, was known to be damaged or spoiled and, immediately after December 31, 1919, the taxpayer, in accordance with its custom of many years, caused the spoiled or damaged goods to be segregated from the other merchandise, and, in the month of January, 1920, offered them to jobbers at a certain price. One of the two jobbers to whom the goods were offered agreed to purchase a certain lot of them at the price put on them by the taxpayer, but actual delivery and acceptance were not to be made until a later date. In May or June, 1920, the jobber, in accordance with the agreement made in January, 1920, and at the price fixed at that time, purchased one lot of the damaged or spoiled goods so segregated and set aside by the taxpayer. On that lot the taxpayer realized an amount which was $46,962.72 less than the amount at which the goods were included in the inventory of December 31, 1919. The other jobber could not agree with the taxpayer on a price for the goods offered to him, and no sale to him was made or agreed upon in 1920. He subsequently, in 1922, purchased the lot of goods which had been offered to him in January, 1920, and paid the taxpayer therefor an amount which was $3,159.73 less than the amount at which the goods were included in the closing inventory of 1919.

3. In computing its net income for the year 1919, the taxpayer reduced the inventory of December 31, 1919, by $20,000, which represented its estimate of the amount of loss in inventory values of the spoiled or damaged goods. Upon audit of the taxpayer's return the Commissioner disallowed the $20,000 reduction in the closing inventory for 1919. A hearing was subsequently granted the taxpayer at which it claimed that it should be permitted to reduce its closing inventory for 1919 by $50,122.45. The Commissioner permitted taxpayer to reduce the inventory of December 31, 1919, by $21,549.94, but refused to allow the further reduction of $28,572.51, and determined that there is a deficiency of tax for the year 1919 of $11,055.81, of which, however, less than $10,000 is in controversy. The taxpayer was notified of the Commissioner's

determination by registered letter mailed September 20, 1924. The petition herein was filed November 15, 1924.

## DECISION.

The amount of the deficiency to be assessed for the year 1919 should be computed in accordance with the following opinion, and will be settled on consent or on ten days' notice under Rule 50.

## OPINION.

MARQUETTE: The question presented here is whether or not the taxpayer should be permitted to reduce its closing inventory for the year 1919 by the additional amount of $28,572.51, in order correctly to determine its income for the year 1919. The taxpayer contends that the further reduction is necessary to reflect the true value of merchandise on hand at December 31, 1919; that the shrinkage in value had actually occurred, and that, as the Commissioner has heretofore permitted a reduction of $21,549.94, he should now be required to permit the further reduction sought.

Section 203 of the Revenue Act of 1918 provides:

That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting income.

The evidence in this case shows that the taxpayer took its inventory as of December 31, 1919, at cost. or market, whichever was lower, on the basis that all goods were standard and in good condition. It was known to the manager of the corporation, as well as to the employees who assisted in making the inventory, that a large quantity of the goods on hand was damaged or spoiled, and that the inventory as made did not reflect the true value of the articles listed thereon. However, no adjustment was made at that time, because the exact amount of damaged or spoiled goods was not known. Immediately after the inventory of December 31, 1919, had been completed, the manager of the corporation, in accordance with his custom, had all damaged and spoiled goods removed from stock and segregated, and in January, 1920, they were offered for sale to jobbers who had been induced to come to Akron with a view to purchasing. One of the jobbers agreed to purchase a certain lot of the goods so offered at a price then and there determined, but, because he was carrying large stocks at that time, the actual delivery was postponed. The goods were actually delivered at a later date in accordance with the terms agreed upon in January, 1920. The other jobber could not agree with the taxpayer on a price for the goods offered to him, and no sale was made at that time, but he subsequently returned, in 1922, and purchased the goods then.

The manager of the corporation, in preparing its income-tax return for 1919, arbitrarily reduced the closing inventory by $20,000, which was his estimate of the amount of shrinkage in value on account of spoiled and damaged goods, they having not been disposed of at that time. The Commissioner properly disallowed that reduction, which was only an estimate and inaccurate.

It is clear from the evidence in this case that the taxpayer's inventory of December 31, 1919, did not accurately reflect the cost or market value of the goods on hand at that time. The Commissioner has heretofore recognized that the inventory values were too high by $21,549.94. We think the evidence further establishes that, on account of the fact that the taxpayer inventoried its goods on the basis of their being in good condition, whereas part of them were, in fact, damaged or spoiled, the closing inventory for 1919 showed a value at least $46,962.72 greater than the cost or true market value at that time. The taxpayer, having ascertained that its stock contained damaged and spoiled goods, immediately took steps to dispose of them and to determine what their market value really was on December 31, 1919, and to correct its inventory accordingly.

The method adopted was, in our opinion, the most feasible under the circumstances and is not, we think, inconsistent with either the law or the regulations promulgated thereunder. The taxpayer should, therefore, be permitted to reduce its inventory of December 31, 1919, by the amount of $25,412.78, in addition to the reduction of $21,549.49 heretofore allowed by the Commissioner. The further reduction of $3,159.73, claimed by the taxpayer, can not properly be allowed, as the goods on which that alleged shrinkage or loss of inventory value occurred were not sold until the year 1922. The sale in that year, for an amount then determined, is not sufficient to warrant us in holding that the sale price was the true market value of the goods on December 31, 1919.

On consideration by the Board, JAMES dissents.